# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **ANTHONY D. WALKER, II,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 3:25-cv-01222** |
| | ) | |
| **RUTHERFORD COUNTY ADULT** | ) | **JUDGE CAMPBELL** |
| **DETENTION CENTER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Anthony Walker, II, an inmate of the Rutherford County Adult Detention Center (RCADC) proceeding pro se, filed a Complaint under 42 U.S.C. § 1983 (Doc. No. 1) and an application for leave to proceed in forma pauperis (IFP) (Doc. No. 2) on October 22, 2025. On December 18, 2025, the Court granted Plaintiff's IFP application and directed him to file an Amended Complaint, if he desired to do so, within 30 days. (Doc. No. 9.) On January 6, 2026, Plaintiff filed his Amended Complaint. (Doc. No. 12.)

The Amended Complaint is now before the Court for initial review under the Prison Litigation Reform Act (PLRA).

## I. INITIAL REVIEW

### A. Legal Standard

In cases filed by prisoners, the Court must conduct an initial screening and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Complaint states a claim upon which relief may be granted, the Court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A viable claim is stated under 42 U.S.C. § 1983 if the Complaint plausibly alleges (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The Court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to Plaintiff. *Inner City*, *supra*.

## B. Factual Allegations

The Amended Complaint claims that eight Defendants—Rutherford County Sheriff Mike Fitzhugh; Chief Deputy and RCADC Chief Operating Officer Kevin Henderson; Mail and Receiving Deputy Miles; Receiving and Legal Secretary Jackie Rackley; Lieutenant Davis and Deputy Corporal Parker, the first and second shift supervisors, respectively, over incoming mail distribution at RCADC; Deputy Layhew, the Line-Staff Deputy over Mail and Receiving; and Mail and Receiving Supervisor Lt. Franzel—are responsible for Plaintiff not receiving timely delivery of his legal mail from this Court on two occasions, delaying "for 34 days one time and 14 days the second time." (Doc. No. 12 at 5.) On both occasions, Plaintiff was eventually provided

2

with copies of his legal mail but did not receive the original documents. (*Id.*) The RCADC inmate handbook, dated June of 2025, "states all legal mail will only be opened in front of inmates, searched for contraband and then given to inmates," but this does not happen. (*Id.* at 6.)

During July of 2025, Plaintiff's attorney attempted on two occasions to deliver (once via mail and once via hand delivery) items that Plaintiff did not receive timely, or at all. (*Id.* at 3, 6.) The hand delivery was given to either Defendant Rackley or Defendant Miles but was never provided to Plaintiff. (*Id.* at 3, 6.) As to the mailing, Plaintiff states that "Defendants with[h]eld [his] legal mail from [his] lawyer for over 60 days" (*id.* at 3), and that this withholding "prevented [him] from taking an offer that was time sensitive," resulting in the extension of his pretrial detention by "more than 180 days." (*Id.* at 7.)

When Plaintiff asked Defendant Rackley about the delay in receiving mail from the Court, Rackley responded that she could deliver Plaintiff's mail "anytime at her leisure." (*Id.* at 6.) Plaintiff responded that RCADC policy did not allow such delay, and Mrs. Miles stepped in, asking Plaintiff, "Who are you? The boss?" (*Id.*) Plaintiff did not receive his service copy of the Court's December 18, 2025 Order until December 31, thirteen days later. (*Id.* at 3, 6.)

In response to Plaintiff's grievances concerning the copying or scanning of his legal mail, Defendants Davis, Franzel, Miles, Layhew, and Parker have all said either "noted" or "policies have changed." (*Id.* at 6.) Plaintiff asserts that Sheriff Fitzhugh and Chief Deputy Henderson "are at fault for allowing their continued campaign of harassment." (*Id.*)

As relief for these deprivations, Plaintiff seeks money damages. (*Id.*)

**C. Analysis**

The Amended Complaint does not identify any federal right at stake in the withholding or untimely delivery of mail from Plaintiff's attorney or the Court, but the Court liberally construes the Amended Complaint to assert a claim under the First Amendment.

Prisoners have a right to receive mail under the First Amendment, "but prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives." *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003) (citing *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992)). Nevertheless, "prison officials must put forth legitimate reasons for interfering with a prisoner's incoming mail." *Knop*, 977 F.2d at 1012 (citation and internal quotation marks omitted). This is particularly so in the case of legal mail from a lawyer or court, which triggers "heightened" concern because legal mail may have "import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts." *Sallier*, 343 F.3d at 874, 877; *see also Jones v. Caruso*, 569 F.3d 258, 267–68 (6th Cir. 2009). A "prisoner's interest in unimpaired, confidential communication with an attorney is an integral component of the judicial process and, therefore, ... as a matter of law, mail from an attorney implicates a prisoner's protected legal mail rights." *Am. C.L. Union Fund of Michigan v. Livingston Cnty.*, 796 F.3d 636, 643 (6th Cir. 2015) (quoting *Sallier*, 343 F.3d at 877). Still, jail or prison officials "may take at least some steps to verify legal mail before being required to treat it as such." *Warner v. Chambers-Smith*, No. 2:24-CV-1565, 2025 WL 3638202, at *3 (S.D. Ohio Dec. 16, 2025) (citing *Merriweather v. Zamora*, 569 F.3d 307 (6th Cir. 2009), for the proposition that legal mail must be "properly" labelled to warrant constitutional protection)); *see also Guajardo-Palma v. Martinson*, 622 F.3d 801, 804 (7th Cir. 2010) (reasoning that most court mailings "are public documents," though "some are sensitive," and while a mailing ostensibly from a court is deserving of protection,

4

"[p]rison officials cannot be certain, just from the return address on an envelope, that a letter is from a ... court").

The Sixth Circuit has held that a showing of prison employees repeatedly opening legal mail outside the prisoner's presence suffices to state a First Amendment claim for damages. *Merriweather*, 569 F.3d at 317 (citing cases). Here, the Amended Complaint alleges that two deliveries from Plaintiff's attorney were received by mail staff at the RCADC but not distributed to Plaintiff according to RCADC policy, and that the failure properly to deliver them resulted in Plaintiff's inability to accept a time-sensitive offer in his criminal case. (Doc. No. 12 at 3, 7.) For purposes of initial review, this is sufficient to state a plausible First Amendment claim. This claim will proceed for further development against Defendants Rackley and Miles, the officials to whom delivery of the attorney's mailing was made, and who allegedly claimed the prerogative to deliver copies of such mail at their leisure. The claim will proceed against Rackley and Miles in their individual capacity.

As to the official-capacity claim against Rackley and Miles, that claim is equivalent to a claim against their employer, Rutherford County, *see Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003), and therefore requires a plausible allegation that a county policy was the "moving force" behind the constitutional deprivation. *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010). At this early stage, the Amended Complaint's allegations allow the reasonable inference that the RCADC mail staff has implemented a new county policy of opening legal mail outside the prisoner's presence, copying the legal mail, and then providing the copies to the prisoner. Accordingly, Plaintiff's First Amendment claim will proceed against Rackley and Miles in their official capacity as well as their individual capacity.

However, none of the remaining Defendants are alleged to have been personally involved

5

with the handling of Plaintiff's legal mail. "[A]ll individual capacity claims" under Section 1983 —whether against a prison guard who had direct contact with the plaintiff or a supervising officer who did not—"require[] an allegation of personal liability." *Venema v. West*, 133 F.4th 625, 633 (6th Cir. 2025) (citing *Peatross v. City of Memphis*, 818 F.3d 233, 240–41 (6th Cir. 2016)). "It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal as to that defendant, even under the liberal construction afforded to pro se complaints." *Green v. Correct Care Sols.*, No. 3:14-cv-01070, 2014 WL 1806997, at *4 (M.D. Tenn. May 7, 2014) (citing cases).

The Amended Complaint identifies Defendants Davis, Parker, Layhew, and Franzel by their roles within the RCADC mail/receiving operation, but does not allege any active unconstitutional behavior on their part or on the part of Sheriff Fitzhugh and Chief Deputy Henderson (who are not alleged to have roles in the handling of inmate mail but who generally supervise the RCADC's operation) vis-à-vis the handling of Plaintiff's legal mail. *See Venema*, 133 F.4th at 633 (requiring allegation of "some active unconstitutional behavior" that is "directly correlated with the plaintiff's injury"). A supervisor must be alleged to have "violated the Constitution through her own actions"; she "cannot be held liable for the constitutional violations of subordinates" simply because she was charged with overseeing them. *Id.*

Here, the Amended Complaint alleges that supervisors Davis, Parker, and Franzel, as well as the "Line-Staff Deputy" over "Mail and Receiving," Layhew (Doc. No. 12 at 3–4), have all given roughly the same response to Plaintiff's objections to his legal mail being copied or scanned —they all wrote "noted" or "policies have changed" in response to his grievances or emails. (Doc. No. 12 at 6.) These allegations are insufficient to establish the fact of these supervisory officials'

6

personal involvement with or acquiescence in the unconstitutional conduct claimed here. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (holding that supervisors' denial of administrative grievances and failure to remedy alleged unconstitutional behavior do not show sufficient involvement to support § 1983 liability). Accordingly, Defendants Davis, Parker, Layhew, Franzel, Fitzhugh, and Henderson will be dismissed from this action.

## II. CONCLUSION

As explained above, the Amended Complaint will be allowed to proceed against Defendants Rackley and Miles.[1] Defendants Davis, Parker, Layhew, Franzel, Fitzhugh, and Henderson are **DISMISSED** from this action.

The original Complaint named the RCADC a defendant, but the Amended Complaint does not do so. Accordingly, the Clerk **SHALL** terminate "Rutherford County Detention Center" as a party on the docket of this case.[2]

The Clerk previously sent Plaintiff blank summons forms for all Defendants prior to the required PLRA screening of the Amended Complaint. (Doc. No. 13.) As Davis, Parker, Layhew, Franzel, Fitzhugh, and Henderson as well as Rutherford County Adult Detention Center are no longer Defendants to this action, service is not appropriate for those former Defendants.

The summonses received from Plaintiff for Defendants Rackley and Miles as per Doc. No. 13 are incomplete and cannot be issued. (Doc. No. 14.) For Plaintiff's convenience, the Clerk is **DIRECTED** to send Plaintiff two service packets so that he can submit properly completed forms

---

[1] The Court's determination that the Amended Complaint states a colorable claim for purposes of this initial screening does not preclude any Defendant from filing a motion to dismiss under Federal Rule of Civil Procedure 12.

[2] *See Clark v. Jameson*, No. 5:19CV-P74-TBR, 2019 WL 3491845, at *1 (W.D. Ky. July 31, 2019); *see also Drake v. City of Detroit, Michigan*, 266 F. App'x 444, 448 (6th Cir. 2008) (finding that original complaint "is a nullity, because an amended complaint supersedes all prior complaints") (citing *Pintando v. Miami-Dade Housing Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007)).

7

for Rackley and Miles. Plaintiff **MUST** complete the service packets and return them to the Clerk's Office within **30 DAYS** of this Order's entry on the docket. Failure to do so may result in the dismissal of this case.

Upon return of the properly completed service packets for remaining Defendants Rackley and Miles, the Clerk is **DIRECTED** to issue summons to the U.S. Marshals Service for service on those Defendants. Fed. R. Civ. P. 4(b) and (c)(3).

This action is **REFERRED** to the Magistrate Judge to oversee service of process, to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

It is so **ORDERED**.

WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE

8